Judd *v.* Ensign.

———————◆———————

SAME TERM.    *Before the same Justices.*

JUDD *vs.* ENSIGN.

Where, in an action against a party for a forfeiture of a contract executed in duplicate, the copies produced by the respective parties vary in their phraseology, the court will follow the copy which is in the defendant's hands and by which he was governed in making his payments.

Where, by the terms of a contract, dated Dec. 24th, for the sale and purchase of land, the payments were to be made as follows: " $100 on the date hereof, $100 by the 1st of May next, *and the residue to be paid in annual payments of* $100 *each,* with interest on the whole sums unpaid from the date hereof," *Held* that the " residue" was payable in annual payments computed from the 1st of May, and not from the date of the contract.

Although, as a general rule, money payable at no particular place must be tendered personally to the person to whom it is payable, yet where, on the day

Judd *v.* Ensign.

previous to the time when a payment upon a contract became due, the debtor made an ineffectual attempt to find the creditor, but his house was closed, and nobody at home : *Held* that a tender made at the house of the creditor, on the day, to his family, he being absent from home and out of the county, was valid ; the creditor being chargeable with notice that the money would be tendered at the day, and it appearing from the circumstances, that the creditor, by his voluntary absence, &c. intended to render it impossible for the debtor to make a valid payment on the day it became due.

EJECTMENT, to recover a part of lot No. 73 of the original town of Hannibal, tried at the Oswego circuit, before the Hon. HIRAM GRAY, one of the justices of this court, in December, 1848. It appeared upon the trial that the plaintiff had sold the premises in question, consisting of about thirteen acres of land, to the defendant, on the 24th of December, 1841, and an agreement was entered into between the parties, bearing date on that day, by which the plaintiff agreed to convey the land to the defendant upon his paying the purchase money therefor ; and the defendant, according to the contract as set out in the plaintiff's declaration, agreed to pay the " sum of twenty-five dollars per acre for said land, in manner following, to wit : one hundred dollars on the date hereof, one hundred dollars by the first day of May next, and the residue to be paid in annual payments of one hundred dollars each [from the date hereof] with interest on the whole sum unpaid." The agreement contained a clause reserving to the plaintiff the right to declare the contract void, and to take immediate possession of the premises, in case of the non-payment of either of the installments, by the defendant. Duplicate copies of the agreement were executed by the parties, each party retaining one. The copy produced by the plaintiff contained the words "from the date hereof," in the clause respecting the times of paying the purchase money, as placed in brackets above ; but in the copy in the defendant's hands those words were placed at the end of the sentence, viz. " with interest on the whole sum unpaid from the date hereof." The plaintiff claimed a right to recover the possession of the premises by reason of a forfeiture of the contract, on the part of the defendant, by the non-payment of the purchase money. The defendant insisted that there had been no forfeiture incur-

red; that all the installments had been paid except the last, and that that installment was not due, by the terms of the contract, until Dec. 1849, but that on the 1st of May, 1848, he tendered all that was due, to the plaintiff's family, at his house, he being absent at the time. In the endorsements upon the contract, of the payments made from time to time by the defendant, the plaintiff had almost uniformly mentioned the payment as having been due on the 1st day of May. And the defendant's counsel insisted that the parties had, by their acts, fixed the times of payment to be on the first days of May, and proposed to show a tender on the 1st day of May, 1848, of the amount then due. The plaintiff's counsel insisted that the payments fell due on the 24th day of December, and that on the 24th of Dec. 1847, there was due $23,45, and that that amount not being paid the contract was forfeited; and he objected to the evidence of a tender. The defendant's counsel contended that only $120 was unpaid on the 1st of May, 1848, and that $85 of that sum was not due until May 1, 1849. The justice decided that he would receive the evidence, and the plaintiff excepted. The defendant then called Willard Johnson, who testified that on the 1st of May, 1848, he went to the plaintiff's house with $65 to pay him on the contract in question; that he inquired for the plaintiff, and was told by his family that he was not at home—that he had gone east somewhere, for money; that the witness took out the money, and counted it out and put it on the table; it was in American half dollars; that the plaintiff's wife was in the room when the witness first went there; that she was told by one of her sons that she must not stay in the room, and went out; that they refused to take the money; that the witness told them the money would be at his father's house and the plaintiff could call there and get it; that the first time the witness saw the plaintiff he told him the money to apply on the contract was at his father's house, and he could call there and get it, at any time; and that the money was left by him at his father's accordingly, and still remained there in tender. Hull, another witness, testified that one or two days previous to the 1st of May he went to the plaintiff's house

to make a tender, but the family were not at home, and he could not obtain admittance; that he saw the plaintiff, soon after his return from the east, about the middle of May, and told him the money was ready for him, on the contract, at Mr. Johnson's; that the substance of his reply was that he should not take the money.    The plaintiff proved the making of a demand of the amount claimed to be due from the defendant, on the 15th of March, 1848, and the service of a notice upon him dated May 24, 1848, declaring the contract at an end, and demanding an immediate surrender of the premises,

The evidence being closed, the plaintiff's counsel insisted that by the terms of the contract the payments fell due on the 24th day of December, and that inasmuch as the defendant had failed to pay the amount due on that day, and a demand had been made on the 15th day of March, of the amount due, and the possession of the premises had been demanded before the first day of May, the defendant was apprized of the plaintiff's claim, and that the contract was forfeited because the amount due on the 24th day of December was not paid.    He also insisted that the tender should have been made to the plaintiff or to his attorney Mr. Crombie, who held the contract, and that the tender proven by the witness Johnson formed no defence. The justice decided that the parties, by their acts, had fixed upon the first day of May as the time of payment, and that under the circumstances proven he would hold that the tender proved by Johnson was good and constituted a defence; it being conceded by the plaintiff's counsel that no more than the amount tendered by Johnson was then actually due by the terms of the contract.    And the justice directed the jury to find for the defendant. To which decision and direction the counsel for the plaintiff excepted.    Whereupon the jury, under such direction of the court, found a verdict for the defendant.    And the plaintiff, upon a bill of exceptions, moved for a new trial.

*J. Crombie,* for the plaintiff.

*H. A. Foster,* for the defendant.

Judd *v.* Ensign.

*By the Court,* GRIDLEY, J. The plaintiff sought to recover in ejectment a farm, which he had sold to the defendant by contract, on the ground that the latter had failed to pay, when due, a small balance of the purchase price of the premises. The justice who held the circuit granted a nonsuit at the trial, which the plaintiff now moves to set aside. And two questions arise upon this motion.

*First.* Whether the annual pay day, under the contract, fell on the 24th of December or the first of May. The phraseology of the duplicates of the contract differed somewhat in one particular. If that difference is material, then, we think, in an action against the defendant for a forfeiture of his contract, by reason of its non-performance, we should follow that copy which was in the defendant's hands and by which he was governed in making his payments. Both copies bear date on the 24th of December, 1841 ; and the clause providing for the payment of the purchase price and interest is in the following words : " One hundred dollars on the date hereof, one hundred dollars by the first of May next, *and the residue to be paid in annual payments of one hundred dollars each,* with interest on the whole sum unpaid from the date hereof." Now the plaintiff contends that the " residue" is payable in annual payments from the *date,* while the defendant insists that the annual payments should be computed from the first of May. And this we think the fair construction of the contract. Throwing out of our consideration the clause providing for the payment of interest, (which on a careful reading appears to have been inserted to show *when* the interest should begin to run, and not to fix the periodical times of payment) there is nothing in the language used to indicate that the periodical payments were to date from the 24th of December rather than the first of May. Indeed the first of May is the last antecedent to which those payments would most naturally refer. Again ; in the purchase of farms, possession is usually taken in the spring, and the payments are made to fall due then. It is also true that the first payment was paid down, and strictly was not a future payment secured by the contract. The execution of the agreement and the pay-

Judd *v.* Ensign.

ment of the first hundred dollars were contemporaneous acts. We can see no reason why a payment should have been required to be made in May at all, if all the rest of the purchase money was to be paid in annual installments from the date of the agreement. It seems more reasonable to suppose that all the installments were to fall due on the first of May, except what was paid down, which was in no sense a *future installment.* We are corroborated in this construction of the agreement by the practical interpretation given to it by the parties. They have shown that they understood the annual payments of principal and interest as falling due on the first of May. That has been the practical payday, as is manifest from the receipts endorsed on the contract. We therefore hold that the defendant has not forfeited his rights under this contract by an omission to make his payment on the 24th of December instead of the 1st of May.

*Secondly.* The remaining question is, whether the judge erred in holding the tender, on the 1st of May at the house of the plaintiff, a good tender. A tender, at the house, of moneys due upon a mortgage, was held good, in a case where an offer was made to the mortgagee, several days before the payment fell due, and she then declined to receive it, but said that she should be back from a place which she named, about 40 miles distant, before the day of payment. She did not in fact return by the day, and the tender at the house was adjudged valid. This case, (*Smith* v. *Smith,*) is reported in the 25th Wendell, 405, and a note of it is also found in 2 Hill, 351, where it is said that Judges Bronson and Cowen agreed to the decision under the particular circumstances of that case ; though, as a general rule, the tender should be to the person. We think, if the tender was good in that case it is in this. Here, an ineffectual attempt was made to find the plaintiff, on the last day of April, his house then being closed. On the first of May the defendant's agent got admitted into the house, but was told that the plaintiff *had gone east.* From the state of the negotiations between the parties, and from what the plaintiff knew of the defendant's claim, as to the true payday under the contract, it cannot be doubted that the plaintiff is to be chargeable with no-

Judd *v.* Ensign.

tice that the money would be offered on the first of May. He was voluntarily absent, and, as is conceded, out of the county at the time ; and the conduct of his family, in refusing to receive the money, and of his wife, in particular, fleeing from the room, warrants a fair inference that the plaintiff intended to render it impossible for the defendant to make a valid payment on that day, and thus produce a forfeiture of his contract. Under these circumstances, should not a tender *at the house*, (the plaintiff being out of the county,) be held good, under the decision in *Smith* v. *Smith* ? We think it should. In that case the mortgagor *might* have sent 40 miles and made a personal tender ; as he was informed of the place to which the mortgagee had gone ; but in this case all that could be ascertained by the defendant was that the plaintiff had " *gone to the east.*" The defendant then could save his forfeiture in no way but to tender at the house. He did so : and left word with the family where the money would be deposited. The plaintiff was personally informed of this, after his return home ; but he refused to receive the money, and insisted that the contract was forfeited ; and this after all but a small balance of what remained due had been paid at different times during a period of six or seven years ; and that small balance had been tendered at his house.

For these reasons we are of the opinion that neither law nor justice requires the nonsuit to be set aside.

New trial denied.