## CHARLES E. HALL *vs.* MARY WHITTIER.

Where a bill for specific performance of a contract for the sale of land, providing that the purchaser should pay for it $10,000 on delivery of the deed, on or before April 1, 1873, filed by the purchaser, stated that he paid the defendant, March 14, 1873, $300, and that, on the 1st day of April, 1873, he diligently sought the defendant, having with him $9,700, in legal tender notes, until about six o'clock P. M., both at her place of business in P. and her residence in N. P., for the purpose of making a tender of the money and demanding his deed; that failing to find her, and believing she was purposely avoiding him, and not deeming it safe to take such a sum of money home with him, he then deposited it in bank and started for home. *Held*, on demurrer to the bill, that the allegations thereof were such that under them evidence might be introduced to show that the purchaser had done what was equivalent to performing or tendering performance of the contract on his part, and that the effect thereof was not avoided by the fact that the defendant met him in the road after dark, on his way home, on said 1st of April, and tendered the deed and demanded the purchase money, which he had then deposited, and was therefore unable to pay her.

Where a contract is to be performed on a certain day, and at a certain place, the legal time of performance is the last convenient hour of the day for transacting the business, usually such convenient time before sunset as that the act may be completed by daylight. A tender after sunset is sufficient, if the party to receive it is present, but the absence of either party then is not a default.

BILL IN EQUITY for specific performance of a contract for the sale of real estate. The case was heard upon the respondent's general demurrer to the bill, the allegations of which are stated in the opinion of the court.

*John Eddy*, for the respondent, in support of the demurrer.

I. The parties having given each to the other bonds of even dates, in the penal sums of $1,000, that the one would sell and the other would buy, on April 1, 1873, at a certain price (the purchaser first, on or before said day, to make demand for the deed, and to tender the consideration money, no place being agreed upon for the performance), a parcel of land (as described in the bill), each party claiming that the other has forfeited his bond, the contract must be construed strictly. Leake's Law of Contracts, 347, 350, 435 ; *Shotwell* v. *Dennman*, Coxe, 174 ; *Pordage* v. *Cole*, 1 Wm. Saund. 320 ; *Withers* v. *Reynolds*, 2 B. & Ad. 882.

II. No *place* being agreed upon for the performance of the contract, the party to do the first act must seek out and find the other, " if within the four seas," and make tender and demand, on his part, at his peril. Leake's Law of Contracts, 448 ; Sheppard's Touch. 136, 378 ; *Kidwelly* v. *Brand*, Plowd. 71 ; *Startup*

v. *McDonald*, 6 M. & G. 593 ; *Cranley* v. *Hillary*, 2 M. & S. 120–122.

III. A personal tender of a sufficient deed by the defendant to the plaintiff, at any time before midnight of April 1, 1873, is a sufficient performance on her part, *unless* before midnight the plaintiff fulfils his obligation of demand and tender. 1 Parsons on Con. chap. iv. p. 445 ; 2 Parsons on Con. chap. iii. 174, 175 ; Bacon's Abr. Tender, D, paragraphs 18–27 ; Bacon's Abr. Tender, F, paragraphs 4 & 5 ; *Startup* v. *McDonald*, 6 M. & G. 593 ; *Jackson* v. *Harrison*, 17 Johns. 66 ; Leake's Law of Con. 441, and cases cited, and p. 448 ; Dane's Abr. vol. 5, p. 486, rule 12 ; *Liftley* v. *Mills*, 4 T. R. 170 ; *Wade's case*, 5 Co. 114 ; *Weston* v. *Collins*, 34 L. J. C. 353.

IV. And if the parties met at or about sunset of said April 1st, and defendant personally offered the plaintiff a good and sufficient deed, and the plaintiff did not *then*, nor thereafter on that day, demand the deed, nor make tender of the consideration money before midnight, nor ask for delay, he has forfeited his bond and cannot compel a specific performance. No tender after the day named in the bond can avail. *Rose* v. *Brown*, Kirby, 293 ; Leake's Law of Con. p. 346, and cases cited ; *Howe* v. *Huntington*, 15 Maine, 350.

V. The tender was lost by subsequent demand. *Rose* v. *Brown*, Kirby, 293 ; *Shybey* v. *Hide*, 1 Camp. 181 ; *Coles* v. *Bell*, Ibid. 478, note ; *Coone* v. *Calloway*, 1 Esp. 115 ; *Lamb* v. *Lathrop*, 13 Wend. 95, 1st head note ; *Edwards* v. *Yates*, R. & M. 360 ; *Peirse* v. *Bowles*, 1 Stark. 323 ; *Huston* v. *Noble*, 4 J. J. Marshall, 130 ; *Waters* v. *Brown*, 7 Marsh. 123.

*Matteson*, for the complainant, *contra*. I. The complainant's failure to perform the contract was occasioned by no fault of his own.

II. The respondent's avoidance of the complainant, or her absence and neglect to appoint some one to act for her, excuse the failure of the complainant to demand the deed and tender the residue of the purchase money, and his agreement to assume the mortgage within the time appointed. *Borden* v. *Borden*, 5 Mass. 67 ; *Gilmore* v. *Holt*, 4 Pick. 255 ; *Tasker et al.* v. *Bartlett et al.* 5 Cush. 359 ; *Southworth* v. *Smith*, 7 Cush. 391.

III. The tender of a deed of the property to the complainant

by the respondent, after dark, and on the road, was of no effect. 1st. The time and place were unreasonable. *Tucker* v. *Buffum*, 16 Pick. 46 ; *Town* v. *Trow*, 24 Pick. 168. 2d. The respondent was under no obligation to tender the deed till a demand had been made by the complainant and he had fulfilled or offered to fulfil his part of the agreement. See agreement set forth in condition of the bond. 3d. It was not made in good faith. This is shown: (*a.*) By the time and place of making it. (*b.*) By her absenting or concealing herself so as not to be found. (*c.*) By her refusal to make the conveyance on the 3d of April, 1873. " The law does not allow a party to defeat another's rights by fraud." Bigelow,. J., in *Southworth* v. *Smith*, cited above.

DURFEE, J. This is a suit in equity to enforce the specific performance of a contract for the sale of real estate. The terms of the contract are indicated in the condition of a bond given by the defendant to the plaintiff, on the 14th day of March, 1873. The terms were, that the plaintiff should pay for the land ten thousand dollars, on delivery of the deed, on or before the 1st day of April, 1873, and should assume a mortgage on the land for five thousand dollars, and that the defendant should, on or before the same day, deliver to the plaintiff a good deed of the land, subject to said mortgage, the plaintiff making demand for the same, and fulfilling the conditions of the contract on his part. The bill alleges, that on the 14th day of March, 1873, the plaintiff paid to the defendant, at her request, the sum of three hundred dollars, in part consideration for the real estate, and that, on the 1st day of April, 1873, he diligently sought the defendant, having with him the sum of $9,700, in legal tender notes, and an agreement to assume the mortgage, till about six o'clock in the evening, both at her place of business in Providence and at her residence in North Providence, for the purpose of demanding a conveyance of the real estate and tendering said money and agreement, but that, as the plaintiff believes, the defendant wilfully and persistently kept herself out of the way, with the intent that the plaintiff should not find her and should not be able to demand the conveyance and tender the money and agreement ; that, at about six o'clock P. M., despairing of being able to find the defendant, and not deeming it safe

to take so large a sum of money to his home in North Providence, he deposited the same in a bank for safe keeping and started for home; that when he had nearly reached his home, and when it had become quite dark, he was stopped in the road by the defendant, who brandished a paper in his face, exclaiming, "There is your deed; where's your money?" that he replied: "I have been looking for you, with the money, ready to take the deed, at your house and place of business, all day long; I have deposited it in the bank for safe keeping; I will get the money in the morning, and be round to your place early, ready to take the deed, and, if I do not find you, shall look for you till I do;" that the defendant replied: "This is the day; I don't know anything about to-morrow," and went on her way toward Providence. The bill further alleges, that on the 2d day of April, 1873, the plaintiff again diligently sought the defendant, prepared to perform the said contract on his part, but without success; that, on the 3d day of April, 1873, he also again sought for and found the defendant, and demanded the conveyance, and, at the same time, tendered the money and agreement; that the defendant refused a deed, and referred the plaintiff to John Eddy, Esq., as her counsel and agent; that he afterwards made demand on said Eddy, accompanying the demand with a tender, as aforesaid, and that Eddy replied he had no authority in the premises.

To the bill the defendant has filed a general demurrer, under which she claims that the plaintiff is not entitled to the relief prayed for in the bill, on the ground that the plaintiff did not, on or before the 1st April, 1873, perform or tender performance of the contract on his part, or do what was equivalent thereto, or that if he did, the effect thereof was avoided by the subsequent tender and refusal of a conveyance.

There is no claim that on the first day of April the plaintiff actually either performed, or tendered performance, of the contract on his part, but only that he was ready to perform it, and would have tendered performance, but for the default of the defendant in not being present to receive it. If this be so, the court will not allow the defendant to profit by her own default, but will treat the plaintiff's readiness to perform as equivalent to a tender of performance. *Morse* v. *Meret*, 6 Mad. Ch. 26. The ques-

tion then is, does the bill show or contain allegations under which evidence can be introduced to show that there was any such default on the part of the defendant as will excuse the plaintiff from not performing or tendering performance of the contract on his part. The rule, as we find it declared in the cases, is this: Where a contract is to be performed on a certain day and at a certain place, the legal time of performance is the last convenient hour of the day for transacting the business; usually, that is to say, such convenient time before sunset as that the act may be completed by daylight. This rule is established for the convenience of both parties, that neither may be compelled, unnecessarily, to attend during the whole day. Earlier in the day, therefore, neither party can discharge himself in the absence of the other by being present and ready to perform; though, if both parties are earlier present, a tender and refusal then will be as effectual as at a later hour.· *Wade's case*, 5 Co. 114; *Lancashire* v. *Killingworth*, 12 Mod. 530; *S. C.* 1 Ld. Raym. 686; *Hammond* v. *Ouden*, 12 Mod. 421; *Rutland* v. *Batty*, 2 Str. 777; 1 Plowd. 172, 173; *Tinkler* v. *Prentice*, 4 Taunt. 555; *Doe* v. *Paul*, 3 C. & P. 613; *Acocks* v. *Phillips*, 5 H. & N. 183 & note; *Savory* v. *Goe*, 3 Wash. 140; *Tiernan* v. *Napier*, 5 Yerg. 410; *Aldrich* v. *Albee*, 1 Greenl. 120. A tender, however, which is made after sunset, will be sufficient if the party to receive is present, but after sunset, the absence of either party is not a default. *Startup* v. *Macdonald*, 6 M. & G. 593; *Sweet* v. *Harding*, 19 Vt. 587. ) The rule may also be varied by special agreements and usages of business. *Lancashire* v. *Killingworth*, and *Rutland* v. *Batty*, *sic supra*. But the bill contains no allegation from which we are entitled to infer any such variation in the case at bar.

It is urged on the part of the defendant that the rule above stated applies only where the place as well as the time of the performance is appointed; that, in the case at bar, no place of performance was named, and that it was therefore incumbent on the plaintiff to seek the defendant and make the tender to her whereever she was to be found, if within the state. Where money is to be paid in discharge of a· debt, or in fulfilment of a condition, the rule suggested is the rule generally recognized. Co. Lit. 210; Plowd. 71; *Haldane* v. *Johnson*, 20 Eng. L. & Eq. 498; *Smith* v. *Smith*, 2 Hill, 351, & note. In such a case no one is

subject to obligation but the debtor. There may be dicta extending the rule to the case of a mere executory contract; but we know of no decision which so extends it. In such a case, if the contract binds both parties, the obligation is mutual; if it binds only one of them, the other certainly should have the right to seek him, on the appointed day, in the place where, if he were going to perform his contract, he would be most likely to be found. Where the contract is for chattels to be delivered on a certain day, and no place is designated for the delivery, the deliverer is required to bring the chattels to the residence of the receiver, unless there are circumstances, or something in their nature or use, from which it can be inferred that they were to be delivered at some other place. In such a case a tender of the chattels, at the proper place and time, will be good, even though nobody may be present to receive them. 2 Pars. on Cont. (5th ed.) 649–653. Doubtless the rule is deduced from the presumed understanding of the parties; and we see no reason why the rule applicable to the execution of a contract for the sale and purchase of real estate should not be similarly deduced. There are cases which favor this view, though it would be going too far to say that the rule deducible from this view is clearly established.

In *Smith* v. *Smith*, 25 Wend. 405, the defendant contracted to sell the plaintiff a lot of land on which she then resided, to give him a suitable deed by the first of November following, and at the time to surrender possession, if requested, for the sum of $700; $300 when the deed and possession was given, $200 in one year, and $200 in two years, with interest from the time possession was delivered. The plaintiff having heard that the defendant was going away to a place about forty miles distant from her residence, called upon her a fortnight before November 1st. She told him she would be back before November 1st, and declined then to accept payment. On the 1st day of November the plaintiff went to her residence and was told that she was still absent. The plaintiff then made a tender to her son, and presented a deed and required its execution, and demanded possession of the premises. In an action at law for breach of. the contract, the court held the tender sufficient. Nelson, Ch. J., referring to the rule laid down in Co. Lit., said : " The true meaning of the text and commentary, I apprehend, applies to the case where the

party to whom the money is to be paid has no residence in the kingdom. If he has a residence, it would seem to be agreeable to the understanding of the parties to the contract, that the tender should be made there, as it is but reasonable to presume some competent person has been left to transact the business." He adds: " It would be a most inconvenient, and often an impracticable rule, besides liable to great abuse by the party to whom the money is due, to exact in all cases, where no place is mentioned, a tender *personally*. The Code Napoleon provides, ' that if no particular place be named at which payment is to be made, then tender shall be made to the creditor himself, or at his house, or at the place selected for the execution of the agreement.' "

In a note on this case, in 2 Hill, 351, it is said: " The report should have added, that Bronson and Cowen, JJ., concurred in holding the tender of the money, &c., under the circumstances, to be good. They held, however, that in general, if no place for the payment of money be specified, the party is to seek him to whom it is due, if within the state; and this, though the latter be a resident of the state."

In *Judd* v. *Ensign*, 6 Barb. 258, a contract for the sale of land stipulated for annual payments to be made May 1st in each year. Several instalments had been paid. On the 1st of May, 1848, the purchaser tendered all that remained due to the vendor's family, at his house, he being absent at the time. It appeared that, a day or two previous, the purchaser made an ineffectual attempt to find the vendor at his house, which was then closed, and that when the tender was making, the wife of the vendor was in the room, and was told by one of her sons that she must not stay, and went out. The tender was found to be sufficient. The court, however, in their opinion, lay stress upon the circumstances, as showing that the vendor was chargeable with notice that the money was to be tendered on the 1st of May, and that he had formed a design to prevent it, so as to produce a forfeiture of the contract.

There were peculiar circumstances in both these cases, and it may be contended that, but for the circumstances, a personal tender would have been required. In the case at bar the plaintiff alleges his belief that the defendant intended to evade the

tender. If instead of alleging simply his belief, he had directly charged the fact of such an evasion, the case at bar would be very similar to the case of *Judd* v. *Ensign*. The charge is not made, and we are therefore called upon to say whether a personal tender can be excused where the party to receive is within the state and is making no attempt to evade it. We think it may be excused. We do not feel bound by the precedents to hold that the rule, which requires a personal tender when a debt is to be paid, is the rule to be applied in' the case of an executory contract which is to be performed, at the proper time for the tender, by the party to whom the ' tender is to be made. And see *Irvin* v. *Gregory*, 13 Gray, 215; *Clark* v. *Sears*, 3 Clarke (Iowa), 104.

The plaintiff alleges in his bill that on the 1st of April, being prepared to perform the contract, he diligently sought the defendant till about six o'clock in the evening, both at her place of business and at her residence. Evidence may be submitted under this allegation to show, if so great strictness is necessary, that the tender was made at the defendant's residence and at the last convenient time before sunset. We cannot, therefore, refuse relief under this bill on the ground that the bill does not allege a sufficient tender or readiness to perform on the plaintiff's part.

The defendant contends that, if there was a tender, or what was equivalent to it, the effect thereof was avoided by her offer of the deed and demand of the money. We think not. If the plaintiff's readiness to perform was equivalent to a tender, the absence of the defendant was equivalent to a refusal. The plaintiff might treat it as an actual refusal, and, consequently, deposit his money, it being a larger sum than he could conveniently or safely keep about him, in the bank. Having done this, the defendant's demand, to say nothing of its unseasonableness, would not have the effect to put him in default, so long as he did not refuse a compliance with it, but merely requested such reasonable delay as would enable him to comply with it. The cases of *Tucker* v. *Buffum*, 16 Pick. 46, and *Town* v. *Trow*, 24 Pick. 168, cited by plaintiff, are decisive of this point.

Our conclusion is that the demurrer be overruled. In coming to this conclusion, we have not thought it necessary to inquire whether, under the circumstances, the plaintiff is to be held to an

exact observance of the time mentioned in the contract. If, after the answer is in and the testimony has been taken, the question becomes material, we can then consider it to better advantage.

*Demurrer overruled.*