JOHN L. DERICKSON ET AL.

v.

THE CHICAGO SOUTH BRANCH DOCK CO.

1. VENDOR AND VENDEE—DEFAULT IN PAYMENT—CANCELLATION OF CONTRACT.—Where in a sale of land a vendor is by contract vested with the right and power, upon default on the part of the vendee in any payment of interest or principal, to declare the contract void and ended, and with it to terminate the vendee's equitable estate and change the latter's relation of purchaser and equitable owner to that of mere tenant at will of the vendor, and default having been made in the payment of interest, the vendor exercises said power and puts an end to the equitable estate of the vendee, the only decree to which the vendor is entitled is one for the cancellation

of the contract or strict foreclosure. It was therefore error for the purpose of gaining a deficiency decree against the property of the heirs of the deceased vendee to decree the sale of such equitable estate as if it were still subsisting.

2. CONSTRUCTION OF CONTRACT.—Under the contract in question the court is of opinion that none of the principal became due until May 1, 1886, and that the vendor had no right to declare the principal due upon default of payment of interest.

ERROR to the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding. Opinion filed April 28, 1886.

April 10, 1880, the Chicago South Branch Dock Company, as party of the first part, entered into articles executed in duplicates, with Richard P. Derickson, as party of the second part, whereby the former agreed to sell and convey to the latter upon certain terms and conditions, real estate, consisting of five lots situate in Chicago, and particularly described in said articles. The party of the second part covenanted to pay to the party of the first part for such real estate, the sum of $56,250, as follows: $28,125, May 1, 1886; $28,125, May 1, 1887, with interest at rate of six per cent. per annum, from April 10, 1880, until May 1, 1885, to be paid annually, on the first day of May in each year; after that to pay interest at eight per cent. per annum, payable on the first day of May in each year on the whole sum remaining from time to time unpaid.

The duplicate of the contract which the party of the first part held, contained the following provisions:

" And it is mutually covenanted and agreed by and between the parties hereto, that in case default shall be made in any of the payments of principal or interest, at the time, or any of the times above specified for the payment thereof, and for sixty days thereafter, this agreement and all preceding provisions thereof shall be null and void, and no longer binding, at the option of the said party of the first part, its successors or assigns, and all the payments which shall then have been made hereon, or in pursuance hereof, are absolutely and forever forfeited to the said party of the first part, its successors

Derickson v. Chicago South Branch Dock Co.

and assigns. The covenants and liability of the said party of the second part shall continue and remain obligatory upon the party of the second part, and may be enforced, and the said consideration money and every part thereof, with the annual interest as above specified, be collected by proper proceedings, in law or equity, from the said party of the second part, his heirs, executors, administrators or assigns.

"And it is further mutually covenanted and agreed by and between the parties hereto, that in case of default in payment, stipulated to be made by the said party of the second part, or any part thereof, and the election of the party of the first part, its successors or assigns, to consider the foregoing contract of sale at an end and prior payments forfeited, the said party of the second part, his heirs, representatives or assigns, who may have possession or the right of possession of said premises at the time of such default, or at any time thereafter, shall be considered and are hereby agreed, and declared to be in law and equity, the tenant and tenants at will of the said party of the first part, its successors or assigns, on a rent equal to an interest of eight per cent. per annum, as the whole amount of the purchase money above specified, payable quarter yearly from the day of such default in payment of principal or interest. And after such default in payment and election to consider the above contract of sale void, the said party of the first part, its successors and assigns shall and may have and exercise all the powers, rights and remedies provided by the law or equity to collect such rent, or to remove such tenant or tenants, the same as if the relation of landlord and tenant hereby declared, were created by an original, absolute lease for that purpose, on a specified rent, payable quarterly on a tenure at will, and that in such case the said tenant or tenants shall and will pay, or cause to be paid, all taxes and assessments ordinary and extraordinary, which may be levied or assessed on such premises, or any part thereof, during the continuance of such tenancy, and will not commit or suffer any waste or damage to said premises and appurtenances in as good order and repair (ordinary wear and decay and unavoidable injury by the elements excepted), as

they were in at the commencement of such tenancy. This agreement shall be binding upon the respective heirs, executors, administrators, successors and assigns of the parties hereto."

The vendee, Derickson, went into possession of the bargained premises under said contract, but departed this life May 5, 1883, leaving a will, in which his two sons were appointed executors. Interest to May 1, 1883, amounting to $10,125 was paid, but default made as to that due May 1, 1884. August 5, 1884, the vendor brought this bill in chancery against the widow and heirs of the vendee, deceased, setting up the articles of agreement and containing these allegations:

" And your orator further shows that default has been made in the payment of the interest due under the provisions of said articles of agreement on the first day of May, A. D. 1884. And said default has continued for sixty days after said first day of May, and still continues, and that by reason of such default, your orator, as it lawfully might, has elected to declare, and does declare said contract to be forfeited, and the provisions thereof to be null and void, and no longer binding as to your orator, as in said articles of agreement provided, and that the whole of said principal of fifty-six thousand, two hundred and fifty dollars ($56,250), with interest from the tenth day of April, A. D. 1883, has become and is now due and payable to your orator.

"And your orator further shows that it was provided in and by said articles of agreement, that in case of such default as aforesaid, and the election of your orator to declare said contract of sale and prior payments forfeited, that Richard P. Derickson, his heirs, representatives or assigns, who might have possession or the right of possession of said premises at the time of such default, should be considered to be the tenant of your orator, and that your orator, its successors and assigns, should and might have and exercise all the powers, rights and remedies provided by law or equity to collect the rent of such premises from such tenant."

The bill prayed for an accounting and the ascertainment of the rights of the plaintiff, the amount due, and that if not

Derickson v. Chicago South Branch Dock Co.

paid that the premises be sold, all parties foreclosed and the payment from the proceeds of the indebtedness to plaintiff with interest and costs. The minor defendants appeared and answered by guardian *ad litem;* all the adult defendants were defaulted.

The case was referred to a master who found the amount due the complainant, under the contract for principal and interest, to be $61,743.75, upon which the ordinary decree in cases of foreclosure of mortgage was entered, directing that unless some of the defendants pay said sum in two days, the premises be sold by said master. A sale was made, which was reported, with a deficiency of $12,538.59, and the report confirmed. Upon that decree the defendants bring error to this court.

Mr. R. A. Childs and Mr. Geo. W. Smith, for plaintiffs in error; that after the contract was rescinded and forfeited it could neither be continued nor revived for any purpose, cited Barhydt v. Clark, 12 Bradwell, 646; Harzfeld v. Converse, 105 Ill. 534; Livingston v. Short, 77 Ill. 587; Huey v. Grinnell, 50 Ill. 179; Graham v. Holloway, 44 Ill. 385; Moore v. Smith, 24 Ill. 513; Chrisman v. Miller, 21 Ill. 226; Jennings v. Gage, 13 Ill. 610.

Messrs. Mason Bros. and Mr. E. G. Mason, for defendant in error; that the contract expressly provided that in case of forfeiture the covenants and liability of the party of the second part should continue, and such a contract may be foreclosed in equity, cited Holman v. Patterson, 29 Ark. 363; Martin v. O'Bannon, 35 Ark. 68; Harden v. Boyd, 113 U. S. Sup. Ct. 765; Hansbrough v. Peck, 5 Wall. 506.

Heirs are directly liable upon ancestor's specialty debts to amount of assets received: Ryan v. Jones, 15 Ill. 1; Hoffman v. Wilding, 85 Ill. 455; Truett v. Cummons, 6 Bradwell, 75; Hull v. Martin, 46 N. H. 337; Thomas v. Adams, 30 Ill. 42.

McAllister, J. The remedies open to a vendor in case of default in the payments by the vendee, are comprehensively

stated by Mr. Justice Nelson in the case of Hansbrough v. Peck, 5 Wallace, 506: "He may sue on the contract and recover judgment for the purchase money, and take out execution against the property of the defendant, and, among other property, the land sold; or he may bring ejectment and recover back the possession; but in that case the purchaser, by going into a court of equity within a reasonable time and offering payment of the purchase money together with costs, is entitled to a performance of the contract; or the vendor may go in the first instance into a court of equity, as in the present case, and call on the purchaser to come forward and pay the money due, or be forever after foreclosed from setting up any claim against the estate. In these contracts for the sale of real estate, the vendor holds the legal title as security for the payment of the purchase money, and in case of a persistent default his better remedy, and under some circumstances his only safe remedy, is to institute proceedings in the proper court to foreclose the equity of the purchaser where partial payments or valuable improvements have been made. The court will usually give him (the vendee) a day if he desire it to raise the money, longer or shorter, depending on the particular circumstances of the case, and to perform his part of the agreement."

The decree in such a case as that just mentioned would be what the English courts call a decree for the cancellation of the contract. Lysaght v. Edwards, L. R. 2 Ch. Div. 510.

Without stopping to analyze the bill in this present case, it is manifest that the decree is of a wholly different character from one for the cancellation of the contract or strict foreclosure. Instead of being one for the cancellation of the contract, the decree entered went upon the theory of enforcing a lien or charge in favor of the vendor for the purchase money, upon an equitable estate of the vendee or his heirs, by subjecting the same to judicial sale. That an equitable estate in the vendee and lien or charge thereon in favor of the vendor, resulted from entering into the contract in question, is a proposition not open to controversy. Vail v. Drexel, 9 Bradwell, 439, and authorities cited. 1 Pom. Eq. Jur. § 368; 3 Id. §§ 1261, 1262.

But by the express provisions of that contract, the vendor was vested with the right and power, upon default on the part of the vendee in any payment of interest or principal, to declare the contract void and ended, and with it to terminate the vendee's equitable estate and change the relations of the latter from those of purchaser and equitable owner to those of a mere tenant at will of the vendor.

Default having been made in the payment of interest, the vendor, in the most unequivocal manner, exercised, before bringing this suit, said power, thus putting an end to the equitable estate of Richard P. Derickson, created by said contract, but nevertheless for the purpose of gaining a deficiency decree against the property of the heirs of the deceased vendee, takes a decree for the sale of such equitable estate, as if it were still subsisting. Is such a decree the logical outcome of the facts alleged and proven? We think not.

In a note to § 1261, Vol. 3, Pom. Eq. Jur., that learned author treating of this subject says : " Another mode seems to be recognized, at least in some of the States, by which the vendee's equitable estate under the contract is sold in pursuance of a judicial decree. Such a sale would operate as an assignment of the vendee's rights under the contract, and would not be a cancellation of the contract itself." The effect thus ascribed to such a sale must necessarily follow, and that shows how utterly inconsistent the decree in this case is, with the irrevocable position which the vendor has taken of terminating the vendee's equitable estate under the power given by the contract and exercised as above stated.

It is a rule of law based upon sound reason, that a party can not occupy inconsistent positions ; and where one has an election between several inconsistent courses of action he will be confined to that which he first adopts. Any decisive act of the party done with knowledge of his rights and of the facts, determines his election and works an estoppel. Bigelow on Estoppel, 578.

The vendor with such knowledge elected to terminate the vendee's equitable estate, and by that election it is bound. The only decree, therefore, to which complainant below was entitled, was one for the cancellation of the contract.

But there is another difficulty. By the terms of the contract none of the principal became due until May 1, 1886, and i contains no provision which, fairly construed, gave the vendor the right to declare the principal due upon default of payment of interest. Counsel for vendor say the right is given by this provision after the words authorizing vendor to declare the contract void for such default. " The covenants and liability of the said party of the second part shall continue and remain obligatory upon the party of the second part and may be enforced, and the said consideration money and every part thereof, with the annual interest as above specified, be collected by proper proceedings in law or equity from the party of the second part, his heirs," etc.

Now, it has been suggested by counsel for plaintiff in error that in the duplicate which was delivered to the vendee, that clause is expressed as an alternative provision. If there was a material difference between the duplicate produced at the hearing by the plaintiff, and that produced by the defendants, we think the court should be governed by that in defendants' hands. Judd v. Ensign, 6 Barb. 258. But we do not find defendants' duplicate in the record. However, taking the above clause as it stands, and there is nothing in it which authorized the enforcement of the vendee's covenants otherwise than according to their terms. By their terms no part of the principal is due even now. The decree below will be reversed and the cause remanded.

Decree reversed.