Burton G. Morss, Appellant, *v.* Philander K. Salisbury, Respondent.

Where, in an action of trespass, defendant claims title to the *locus in quo* by adverse possession, the declarations of a former occupant under whom defendant claims are admissible as evidence, to characterize his possession as adverse to any title of the plaintiff; and this is competent under a general plea of title, without allegations that title is claimed by adverse possession.

A written instrument not under seal is inoperative and ineffectual to pass the legal title to lands.

Where an agreement is executed in duplicate, if there are variances between the two instruments, they are to be construed together in determining the meaning of the parties. One cannot be regarded as more expressive of the intent of the parties than the other, but they are entitled to equal faith and credit. The want of accuracy in the one is not proven by the mere production of the other. The intent is to be arrived at by an examination of the terms and provisions which are identical in each, thus determining the objects and purposes contemplated. And where the contract bears such inherent evidence of its true meaning that it carries a clear legal conviction, evidence of the intention of the parties or of surrounding circumstances is properly excluded.

Plaintiff claimed a title under a contract executed in duplicate between M. & Co. (of which firm plaintiff was a member) and B. The instrument delivered to M. & Co. purported to convey to them " all the *land* and timber, except the hard wood, on one hundred acres of land;" in that delivered to B. the words were " bark and timber;" aside from this the two were identical. The scope and tenor of the contract indicated that the land itself was not intended to be conveyed. *Held*, that the title of B. to the land was not divested, and that the possession of plaintiff was subordinate thereto. Also, that evidence that the price paid by M. & Co. was the full value of the land, bark and timber together, except the hard wood, was immaterial, and its exclusion no error.

In an action of trespass in Justice's Court, defendant pleaded title to a portion of the premises; that action was thereupon discontinued and one commenced in the Supreme Court, wherein the pleadings were substantially the same. Defendant succeeded on the issues affecting the premises as to which title was pleaded. Neither possession of nor title to the residue was made a question upon the trial by defendant, and the amount of the recovery for trespass thereon was less than fifty dollars. *Held*, that under section 61 of the Code, the costs in such case are to be governed by the decision and judgment on the issue presented by the plea of title; that plaintiff, by claiming title to land not owned by him, caused all the costs which accrued in the Supreme Court; he, therefore, could not recover costs, but was properly chargeable with defendant's.

(Argued January 10, 1872; decided May term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial district, affirming a judgment in favor of plaintiff, entered upon the decision of the court upon the trial, without a jury, at the circuit.

An action was originally commenced before a justice of the peace, for trespasses alleged to have been committed by

the defendant upon two different parcels of lands of the plaintiff, in Greene county, one called the tavern-stand premises, first described in the complaint, and the other the 100-acre lot secondly described therein.

The defendant denied the allegations of the complaint, and also interposed a plea of title to a specific portion of the premises first described, and to the whole of the lot secondly described therein, and delivered to the justice the undertaking required by law to deprive him of jurisdiction, on the issue on the question of title.

Thereupon that action was discontinued, and this was commenced in the Supreme Court for the same cause of action, and the pleadings therein were substantially the same as those before the justice.

The issues were tried before Justice MILLER, without a jury (a jury having been waived by the parties), and he, after hearing the allegations and proofs of the parties, found in favor of the defendant on the question of title, and as to the acts complained of as trespasses on the land covered by the plea of title, and in favor of the plaintiff as to the trespasses alleged to have been committed on the part of the tavern-stand premises, to which the plea of title was not interposed, and awarded damages against the defendant to the amount of six cents.

The judge also found that neither the possession nor the title of the plaintiff to the portion of the premises on which the said trespasses were committed for which the plaintiff recovered said damages, was made a question or controverted on the trial, and therefore he decided that the defendant was entitled to recover his costs of the action.

Exceptions were taken by the plaintiff to the decision of the said justice, adversely to him on the question of title and as to the recovery of costs.

Some exceptions were also taken during the progress of the trial, on the admissibility of evidence which, so far as they are material to the decision in this court, are sufficiently referred to in the opinion of the chief commissioner.

*A. J. Parker* for the appellant. Plaintiff's title to the land under the instrument dated April 22, 1839, was good. (3 R. S., 5th ed., 59 ; 1st ed., vol. 1, 762.) Defendant was a trespasser. (4 Wend., 645, 646; 7 J. R., 1; 9 id., 35, 331; 7 Cowen, 229.) Several written instruments executed at the same time, between the same parties, and relating to the same subject-matter, should be construed as forming parts of a single contract or conveyance. (*Cornell* v. *Todd*, 2 Den. R., 130; *Jackson* v. *Dunsbagh*, 1 Johns. Cas., 91; *Stow* v. *Tiff*, 15 Johns. R., 458; *Rawson* v. *Lampman*, 1 Seld., 456.) The construction must be made upon the whole instrument, and if possible every word must be made operative. (*Jackson ex dem. Troop* v. *Blodget*, 16 Johns. R., 172; *Whallon* v. *Kauffman*, 19 id., 97; *Moore* v. *Jackson*, 4 Wend. R., 58.) The court has no right to assume that word "land" was inserted in plaintiff's instrument by mistake and therefore disregard it, especially when the answer contains no such defence. (*Cornell* v. *Todd*, 2 Den. R., 134, opinion of the court ; *Coon* v. *Knap*, 4 Seld. R., 402, 405, opinion of the court; *Kent* v. *Manchester*, 29 Barb., 597 ; *Wemple* v. *Stewart*, 22 id., 158; Story's Eq. Jur., §§ 152, 155–157; 2 John. Ch., 595, 597.) Defendant's answer not setting up adverse possession, evidence to prove it was inadmissible. (*Jackson* v. *Vandeburgh*, 1 John. R., 159 ; *Jackson* v. *McVey*, 15 id., 234; 30 Barb., 183; 20 N. Y., 400 ; 6 Hill, 407; 16 John., 302; 6 Cowen, 751.) Plaintiff was entitled to judgment for costs. (*Utter* v. *Gifford*, 25 How. Pr., 289; Code § 304.) A plea of not guilty in trespass on land puts the title in issue. (*Dunckel* v. *Farley*, 1 How. Pr., 180; *Van Buskirk* v. *Irving*, 7 Cow., 35.)

*James B. Olney* for the respondent. The findings of fact of the court below, as such, cannot be questioned here. (*Mann* v. *Whitbeck*, 17 Barb., 388.) The agreement of the 22d of April, 1839, for want of a seal, was, as a conveyance of real estate, inoperative and void. (3 R. S., 5th ed., 29 ; 4 Kent's Com., 8th ed., 499, 500 ; 2 Black. Com., 310·; *Jack-*

*son* v. *Wood*, 12 John., 73; *Same* v. *Wendell*, id., 355; *People* v. *Gillis*, 24 Wend., 201. See Edmonds' ed. R. S., vol. 1, p. 689; 1 Shep. Touchstone, 50 id., 56; Plowden's Com., 308; 1 Barb., 542.) Plaintiff's possession was not such as entitled him to maintain an action for trespass. *Stuyvesant* v. *Tompkins*, 9 John., 60, 62; *Wichham* v. *Freeman*, 12 id., 183; *Holmes* v. *Seeley*, 17 Wend., 75; Cow. Treatise, title Trespass; 1 Wait's Law and Pr., 766, 767; Chitty's Pleadings, title Trespass to Real Property; Gould's Pleadings, 4th ed., 43; id., 42, 43, notes by Geo. Gould; *Hall* v. *Hodskins*, 30 How., 27, opinion of court; *Van Leuven* v. *Lyke*, 1 Com., 515; *Houghtaling* v. *Houghtaling*, 35 Barb., 379; *Haight* v. *Badgley*, 15 id., 499; 4 Den., 127.) The agreements should be regarded as one instrument and construed together. (*French* v. *Cahart*, 1 Com., 96, 102, and cases cited; *Springsten* v. *Samson*, 32 N. Y., 703; *Bancroft* v. *Wenspear*, 44 Barb., 209; *Mann* v. *Whitbeck*, 17 id., 388; *Cornwell* v. *Todd*, 2 Denio., 130; *Draper* v. *Snow*, 20 N. Y., 331; *Britannia Co.* v. *Zingsen*, 4 Rob., 312; *Morss* v. *Jacobs*, 35 How., 90; *Jackson* v. *Blodget*, 16 John., 119; *Jackson* v. *Erwin*, 4 Wend., 69.) The clause as to the land must be construed strictly against plaintiff. (1 Daily, 471; *Sears* v. *Shafer*, 1 Barb., 408, 415.) The plaintiff had acquired no rights whatever, by adverse possession. (See numerous cases in Abbott's Digest, vol. 1, p. 38, §§ 9 to 24.) To recover in an action of trespass the plaintiff must be in possession of the premises. (See cases hereinbefore cited; *Wood* v. *City of Williamsburgh*, 46 Barb., 601; *Cowenlaven* v. *City of Brooklyn*, 38 id., 9; *Little* v. *Denn*, 34 N. Y., 454, opinion of the court; 1 Cow. Tr., 3d ed., 414–418; Code, § 81; 2 R. S., Edmonds' ed., 305.) Defendant's possession has been full, absolute, unequivocal and hostile to the claim of all other persons. (*Miller* v. *Platt*, 5 Duer, 273; opinion of the court, 277, and cases cited; *Northrup* v. *Wright*, 7 Hill, 477; opinion of the court, 488; *Jackson* v. *Norton*, 18 John., 355; Code, §§ 81, 83; *Doolittle* v. *Tice*, 41 Barb., 181. See also 1 Abbott's Dig., 38, and cases there cited; *Crary* v. *Goodwin*, 22 N. Y., 170; *Kellogg*

v *Valentine,* 21 How., 226; *Kent* v. *Harcourt,* 33 Barb., 491; *Downing* v. *Miller,* id., 386; *Mosher* v. *Yost,* id., 277; *Jackson* v. *Vermilyea,* 6 Cow., 677; *Jackson* v. *Bowen,* 1 Caines, 358.) Defendant is entitled to costs. (Wait's Code, § 62; *Shull* v. *Green,* 39 Barb., 311; 34 How., 418; *Morss* v. *Jacobs,* 35 id., 90; *Burhans* v. *Tibbets,* 7 How., 54; *Niles* v. *Lindsley,* 8 How., 131; S. C., 1 Duer, 610; *Ashley* v. *Marshall,* 19 How., 110; *Rathbone* v. *McCarmell,* 20 Barb., 311; S. C., 21 N. Y., 466; Voorhies' Code, 1866, pp. 592, 593, and cases cited; *William* v. *Prier,* 53 Barb., 442; *Little* v. *Denn,* 34 N. Y., 457; *Heintz* v. *Dellinger,* 28 How., 39; *Hastings* v. *Gleno,* 1 E. D. Smith, 402.) Evidence of the declarations of a former occupant proper to characterize his possession. (*Jackson* v. *McVey,* 15 John., 234; *Jackson* v. *Sherman,* 6 id., 21; *Jackson* v. *Van Deusen,* 5 id., 144; opin. of court, 167; *Jackson* v. *Murray,* Anthon N. P., 143; 1 Greenleaf Ev. § 109; 1 Halsted Ev., 441, 453; *Burlingame* v. *Robbins,* 21 Barb., 327; *Jackson* v. *Vredenburgh,* 1 John., 159; *Morss* v. *Jacobs,* 35 How., 90; 1 Cow. & Hill's Notes, 3d ed., 217–221; 1 Halsted Ev., 352, 427.)

LOTT, Ch. C.   The defendant, in support of his plea of title to the premises first described in the complaint, introduced a deed bearing date the 25th day of May, 1816, from Jacob Haight, sheriff of the county of Greene, to John Brandow, of a tract of land containing sixty acres, more or less, which had been sold by him under an execution issued out of the Supreme Court, on a judgment recovered by Elisha Williams against David Swart.

There was testimony showing that Swart was in possession at the time of the sale of a portion at least of the premises so sold and conveyed, and there was conflicting evidence on the question whether John Brandow and his devisees, under whom the defendant claimed, had been in possession, exercising acts of ownership from and subsequent to the sheriff's sale and conveyance, and by virtue thereof over the premises covered by the defendant's plea of title.

The finding of the judge, that the defendant and those under whom he claimed title, and not the plaintiff, had title thereto, was necessarily based on the decision of that controverted question of fact in favor of the defendant. That decision having been affirmed by the General Term is conclusive on this court.

The declarations of Brandow which were objected to were admissible to characterize the possession of the defendant as adverse to any title of the plaintiff, and it was sufficient to justify its admission that the defendant had pleaded title generally without showing that it was claimed or held by adverse possession.

It follows, from the views above expressed, that there is no ground for the reversal of the judgment so far as it relates to the premises first described in the complaint. We will now consider whether the decision, as to the second or the 100-acre lot, is erroneous.

It is conceded that John Brandow, on the 22d day of April, 1839, was the owner of the said lot and in possession thereof, claiming title.

On that day two instruments in writing between him and B. G. Morss & Co., of which firm the plaintiff was a member, were executed, one of which was delivered to each party. That given to Morss & Co., and under which plaintiff claims title, was, so far as it is material to present the ground of his claim, as follows: "Memorandum of an agreement made and entered into this twenty-second day of April, eighteen hundred and thirty-nine, between John Brandow, Esq., of the first part, and B. G. Morss & Co. of the second part, all of the town of Prattsville, Greene County, New York, witnesseth, that the said party of the first part has and does, this day, grant, bargain, sell and set over to the said party of the second part all the land and timber, except the hard wood on the 100 acres of land situated in the town and county above-named, bounded on the north by the Hardenburgh line, on the east by lands of Z. Pratt & Co., on the south by the so-called Myers lot, on the west by the lands of Lucas Elmen-

dorf." It then provided that, "in consideration of the above," the said party of the second part should pay unto the said party of the first part thirteen shillings and sixpence "per cord for every cord of bark, peeled on the same," and interest on the same from the date of the instrument.

That the sum of $1,500 on account of the above bark should be paid as soon as the first day of December next after its date, if the party of the first part wished it, and the balance was to be paid yearly as the party of the first part wished, "and as the bark and timber" were taken off, together with the interest annually. Then followed these provisions: "The party of the second part are to have the immediate possession of the land for the purposes above stated and what time they choose to take the same off. Also, the right of crossing the lands belonging to the party of the first part for the purpose of passing to and from the above-named lot. It is understood between the parties that the party of the first part is to receive annual interest on the whole amount of bark peeled or taken off from the lot from this date; the party of the second part to run all risks of fire after two years."

The instrument delivered to Brandow was the same in all respects, except that, in the clause disposing of the property sold, the word "bark" was used instead of "land" before the words "and timber," thus purporting to sell and convey all the bark and timber, etc.

Each of the instruments was subscribed by the parties thereto, but the seal of neither of them was affixed, and the question is presented whether the plaintiff acquired any right or interest under them in the land itself, and my conclusion is that he did not, for the following reasons:

1st. Assuming that the instrument delivered to him is to control the right of the parties, it did not pass the legal title. It was not under seal and was therefore inoperative and ineffectual for that purpose. Without reference to the rules of the common law, it is sufficient to say that it is declared by the Revised Statutes that " every grant in fee or of a freehold estate shall be subscribed and sealed by the person from

whom the estate or interest conveyed is intended to pass, or his lawful agent." (1 Rev. Stat., p. 738, § 137.)

The provision cited by the plaintiff's counsel from 1 Rev. Stat., p. 762, § 38, has application only to the meaning of the term conveyance, as used in the chapter providing for the proof and recording of conveyances of real estate, and declaring what instruments are included under it for the purpose of record.

2d. The two instruments are to be construed together in determining the meaning of the parties thereto. They were executed at the same time, and were intended to be duplicates expressing the same terms and language, and one cannot be regarded as more expressive of and delaring the intention of the parties, nor needing reformation to declare that intention, than the other. On examining them together, and the terms and provisions which are the same and identical in each, there is no reasonable ground for believing that a sale and conveyance of the land itself was contemplated. The language used is inapt and inappropriate to carry out that object. It, as used in the instrument delivered to the plaintiff, conveys " all the land and timber, except the hard wood, on the 100 acres of land situated," etc., evidently having reference to what was *on* the land as the subject of conveyance ; and if the construction given to it by the plaintiff is correct, it would convey all the land *upon* the 100 acres of land as well as all the timber, except the hard wood, thereon.

Such is not the ordinary or usual mode of describing land intended to be conveyed, but if the word bark is substituted for land, then the terms of the grant or conveyance are applicable and appropriate.

The terms of payments are, moreover, regulated by the quantity of bark taken off the premises, and the clause providing that " the party of the second part are to have the immediate possession of the land for the purposes above stated, and what time they choose to take the same off." The purposes referred to are peeling the bark and taking the same and the timber sold off from the land ; and it was very pro-

per that a provision fixing the time during which the purchaser thereof should have the right to do it, if the land itself was not sold to him, but appears to be entirely inconsistent with such a sale. In that case his ownership would secure that right; and a limitation of the time during which the seller should have the privilege of taking off the hard wood reserved and excepted by him for the sale, would be proper and necessary.

Without a further reference to the particular terms and provisions of the instruments in detail, I deem it sufficient to say that the whole scope and tenor thereof clearly show that the land itself was not intended to be sold, and the omission to make a provision for the delivery of a deed is also confirmatory of that construction.

Assuming the views above expressed to be correct, it follows that the title of John Brandow to the land was not divested, and that the possession of the plaintiff was subordinate thereto, and was limited and restricted to the single purpose of securing the bark and timber purchased by him.

It is claimed on behalf of the plaintiff, that the judge erred in excluding evidence that the price paid by him was the full value of the land, bark and timber together, except the hard wood. We think not. The contract itself declared and expressed what was sold, and the price to be paid therefor, could not affect that question, and was wholly immaterial.

It only remains to be considered, whether the plaintiff was entitled to judgment for costs.

He failed on the issues affecting the premises, as to which title was pleaded; and the judge has found that neither the possession of nor the title to the residue was made a question or controverted on the trial by the defendant, and the amount of recovery for the trespass thereon by the plaintiff was less than fifty dollars.

A reference to the pleadings and some of the provisions of the Code will be useful in the consideration of that question.

The action before the justice was brought for the recovery of damages for an unlawful entry on two different parcels of

land. The plea of title was interposed to a greater portion of the first and to the whole of the second.

There was a separate cause of action alleged as to each of those parcels, but not as to any specific part of either; and as the plea of title affected both of those causes, the case does not fall within section 62 of the Code, which provides that if, in an action before a justice, the plaintiff have several causes of action, and a plea of title accompanied with the requisite undertaking is interposed to one of them, the justice shall discontinue the proceedings as to that, and may continue them as to the other or others of them. It is therefore necessary to refer to the other sections. Section 55 provides that " in every action brought in a court of justice of the peace, where the title to real property shall come in question, the defendant may, with or without other matter of defence, set forth in his answer any matter showing that such title will come in question," etc. Section 56 requires the delivery of an undertaking to divest the justice of jurisdiction, and section 57 declares that, " upon the delivery of the undertaking to the justice, the action before him shall be discontinued, and each party shall pay his own costs."

It is then, provided, by section 60, that " where a suit before a justice shall be discontinued by the delivery of an answer and undertaking, as provided in sections 55, 56 and 57, the plaintiff may prosecute an action for the same cause in the Supreme Court, and shall complain for the same cause of action only on which he relied before the justice, and the answer of the defendant shall set up the same defence only which he made before the justice." The next section (61) declares that " if the judgment in the Supreme Court be for the plaintiff, he shall recover costs ; if it be for the defendant, he shall recover costs, except that upon a verdict he shall pay costs to the plaintiff unless the judge certify that the title to real property came in question on the trial."

The effect of the interposition by the defendant of the plea of title and the delivery of the requisite undertaking under the preceding provisions, was to divest the justice of jurisdic-

tion, and it was optional with the plaintiff to prosecute an action for the same cause or not, at his election. The only consequence resulting from his failure to do so was a liability to pay the defendant the costs he had paid to the justice on the discontinuance.

If such action was brought, then the pleadings and costs therein were to be regulated and controlled by the said sections 60 and 61, and the only just and reasonable construction to be given to section 61 is, that the costs in the Supreme Court are to be governed by the decision and judgment on the issue presented by the plea of title before the justice which caused the prosecution of the action in the Supreme Court. The last clause of that section, which provides that the defendant, although he recovers a verdict, shall nevertheless pay costs to the plaintiff, unless the judge certifies that the title to real property came in question on the trial, evidently has reference to the recovery on the plea of title.

A different rule would charge a defendant with all the costs of the action, including those paid to the justice on the discontinuance of the action, although he fully sustained his defence as to all the acts complained of as trespass on the land to which title was pleaded, and the plaintiff's recovery was limited to those only to which no defence was interposed. In other words, the entire costs of the issues raised and tried in an action would be charged on the prevailing party. A construction leading to such a result cannot be sustained.

It is true that the judge has found that the cattle of the defendant have committed trespasses, causing damage to the plaintiff to the amount of six cents, and it may be conceded that he ought to have borne the necessary costs for the recovery of those damages. That concession, however, affords no ground of right to the costs in the Supreme Court. If he had limited his cause of action before the justice to the trespasses for which he has finally recovered, he would also have recovered the costs allowed by law; but he has, by claiming title to land not owned by him, caused all the costs which

have accrued in the Supreme Court, and the law declares, and properly, that he should bear them.

It follows that there is no ground for the reversal of the judgment; it must, therefore, be affirmed, with costs.

Leonard, C. The contract of April 22, 1839, executed by the parties in duplicate, and mutually exchanged, was one instrument, and each counterpart has the same signification, as an expression of the intention of the parties.

The plaintiff executed and delivered to John Brandow a counterpart of the instrument, or one purporting to be such, from which it appears that the plaintiff purchased only "the bark and timber (except the hard wood) on the 100-acre tract," and was granted the right to take immediate possession of the land for the purposes of the contract. According to the tenor of this instrument he has no title to the land, and no trespass against his rights has been committed thereon. It became a part of his case, as the actor seeking redress and invoking the judgment of the court in his favor, to remove every reasonable doubt and obstruction to his right of recovery. The counterpart produced by the defendant was entitled to the same faith and credit as that of the plaintiff. If the plaintiff wished to overcome or remove its force and effect as evidence against his construction, it was his business to present the proper issue to reform or correct it, so that it would truly express the contract on the evidence to be produced under such issue. The want of accuracy in that of the defendant is not proven by the mere production of the counterpart of the plaintiff containing the word "land" in the place of the word "bark," unless the true meaning can be determined by the context or tenor of the instrument to be in harmony with his claim. No doubt the court could, at the trial, properly receive evidence of the situation of the parties, and of the surrounding circumstances, to enable the court to look at the contract in the same light in which the parties entered into it. But there are some instances where no light from the surrounding circumstances, or the situation of the

parties, can overcome the internal evidence of its meaning to be drawn from the written instrument.    The judge or court should receive evidence of this character, when offered, unless it can be clearly determined that neither surrounding circumstances nor situation of parties can affect the question of construction.    It was held, in *Judd* v. *Ensign* (6 Barb., 258), that the copy in the hands of the defendant should be followed, if the difference was material, in an action for a forfeiture of the contract, that being the copy under which the defendant had acted in making a series of annual payments.

The contract of the parties in this case has such inherent evidence of its true meaning, that it carries a clear legal conviction that it relates to a sale of the bark and of the timber, other than the hard wood, and not of the land.    The bark was to be peeled and piled; the mode of ascertaining the quantity is mentioned, and is in part dependent on the peeling and piling; the payment is regulated by the measure or quantity of the bark peeled, as well as by the rate per cord when piled.    The price of bark is stipulated, and not the price of land.    The first payment is on account of " the above bark," and the balance yearly, as the bark and timber were to be taken off.    Interest is to be paid from date on the amount of bark peeled, and the plaintiff is not to bear the risk of fire for the first two years.    The plaintiff may have what time he chooses to *remove* the bark, but no stipulation is imposed upon Brandow as to the removal of the hard wood. A qualified possession is given to the plaintiff, and none other is mentioned or contemplated.    The condition that the consideration or price of the land should be at the risk of the destruction of the bark by fire for two years, as claimed by the construction insisted on by the plaintiff, is without a precedent, and exceedingly improbable.    The land is fixed and certain, and, upon a sale, the payment of the price, is universally sought to be secured beyond any chance.    If the land was purchased, no concession was necessary as to the time for the removal of the bark, and the omission to restrict Brandow, in respect to taking hard wood, would be equally unnatural and remark-

able. These numerous provisions to secure the rights of the parties as to the bark and the soft timber are not appropriate in a contract for the sale of land, but are apt and pertinent to a sale of the growing bark. I have purposely omitted to refer to the surrounding circumstances, which would include the very pregnant fact that the agreement was drawn and copied by the plaintiff, the draft, signed by him as an original, having been delivered to Brandow, who was unable to read or write, for the reason that evidence of the value of the land, bark and timber, excepting the hard wood, was offered by the plaintiff and excluded.

The legal meaning and object of the parties was plain, and the mistake of inserting the term "land" in the place of "bark" was apparent, without any resort to surrounding circumstances. Evidence of the value of the land, bark and timber, excepting the hard wood, would prove nothing material without further proof that the price agreed to be paid was more than the bark and soft wood were really worth. There was no offer to prove that these were not really worth the price stipulated; and no certain inference could be drawn that the price of the bark included the land, even if some witnesses had testified that the price agreed to be paid was equal to the value of both land and bark. This evidence was, therefore, immaterial, and its exclusion was no error.

The judge evidently based his opinion that the land was not included in the contract from its context, and in this conclusion he was entirely correct. This holding also renders the extrinsic evidence of the defendant wholly immaterial, although its admission was not erroneous.

I am unable to perceive that the plaintiff has proved a paramount title to the tavern-stand premises. The defendant and those under whom he claims had been in the possession of the premises under a claim of title for more than forty years; at least there was much evidence tending so to prove. Those from whom the plaintiff derives title, bounded the premises conveyed by them by the lands of John Brandow, under

whom the defendant claims.  It can hardly be possible that land conveyed by another, which was bounded upon land belonging to Brandow, could embrace land by which it was bounded, or of which be was in the possession.  It appears that the title depended upon the facts proven in the case, upon which the judge has passed in rendering his decision, and it is no longer open to discussion.

The plaintiff objects that the defendant did not plead title by adverse possession, and that his claim, based upon title so derived, ought not to have been considered.  In this respect I think he is mistaken.  The defendant states in his answer that these premises had been the freehold of John Brandow, and in his possession for more than forty years prior to 1859 ; that he devised the premises to his daughters, under whose authority the defendant entered and committed the acts complained of.  All the elements of an adverse possession are stated, and it was not important to designate the title as an adverse possession.  The evidence of possession was properly admitted, and the question was finally passed upon by the court.  It is not very apparent that the deed under which the plaintiff claims title purports to convey the premises in question.

The plaintiff also claims that his recovery of six cents damages entitles him to the costs of the action, and that the recovery of costs against him is erroneous.

The sum mentioned was recovered for damages committed by the defendant's cattle in going upon a portion of the lands mentioned in the complaint, as to which the defendant did not plead title in himself.

This action was commenced before a justice of the peace, and discontinued on the plea of title by the defendant. Another action was commenced in the Supreme Court, and it must be presumed that the defendant set up the same defence only, which he made before the justice, as was authorized and directed by section 60 of the Code.  There was no question raised that the answer was not the same that had been made before the justice.  Hence it is plain that the damages now

recovered by the plaintiff might have been recovered before the justice.   But the plaintiff sought to recover other damages for trespasses upon other lands which he claimed · to own, as to which the defendant interposed a plea of title, and has succeeded.

The sixty-first section of the Code directs that, in such an action, the defendant shall pay costs upon a verdict, unless the judge certify that the title to real property came in question on the trial.   As to the trespasses concerning which no plea of title was interposed, the action might have been continued under section 62.

The judge, before whom the action was tried, has certified that the defendant did not controvert the plaintiff's title to the land upon which the defendant's cattle committed trespasses, and as to all the residue of the lands, mentioned in the pleadings, the judge has found, and has thereby sufficiently certified, that the defendant had title, and that the title was in issue.   The determination of the title was the only subject in controversy.   There has been no recovery, by the plaintiff, as to any trespasses where the title to land came in question. Hence the plaintiff is not entitled to costs, under section 304 of the Code, and the defendant is entitled thereto under section 305.

The plaintiff has also insisted that he is entitled to costs under title 6, of chapter 5, of part 3 of the Revised Statutes. It is entirely plain, on a reference to that chapter, that this action was not prosecuted under it, and is not governed by it in any respect.   It is not necessary, therefore, to discuss the question whether that chapter is still in force, or has been repealed by the Code.   We may concede that it has not been repealed ; it would not avail to give costs to the plaintiff, nor to save him from liability therefor.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.