The People of the State of New York, Respondent, *v.* Russell E. Holmes, Appellant.

1. Evidence— Contents of Surveyor's Book— Objection not Raised Below.  Upon the trial of an action to recover damages for the cutting and removal of timber from state lands, a witness who has testified that he found among the papers of his father, who was a surveyor, a book of what pur₊orted to be field notes, may properly testify that it contained among other things what purported to be field notes with regard to the land from which the timber was cut, and an objection to h's further testimony that he used them in making his survey, although they were not further described nor offered in evidence, not having been made below nor raised by a motion to strike out, cannot be considered on appeal.

2. Trial — Refusal to Charge.  Where the defendant claims that he was an innocent purchaser of the timber in question and that he agreed to pay and did pay the one who cut the timber in question upon orders of the party from whom he purchased, but the plaintiff insists that the defendant knew where the timber came from, that he employed the cutter, and that the arrangement claimed was a mere cover, a request to charge that if he only agreed to pay on the orders he is not liable, is properly refused since it would prevent the jury from finding that he assisted in the trespass, in case it adopted plaintiff's view of the transaction.

3 Declarations of Former Owners of Land, When Inadmissible.  Where an action presents no issue as to the possession or ownership of adjoining lands, and merely raises a controversy over the division line between them, as controlling the right of the plaintiff to sue for a trespass, the defendant cannot prove title in third parties by declarations of former grantors of the lot not owned by the plaintiff, that the division line was not located in their time as the plaintiff now claims it to be.

*People* v. *Holmes,* 53 App. Div. 626, affirmed.

(Argued March 7, 1901; decided April 16, 1901.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 13, 1900, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*N. H. Anibal* for appellant.  The plaintiff, under the admitted facts in the case, has not located subdivision 10 of great lot 68 upon the ground where the logs in question were

cut. (L. 1827, ch. 2; L. 1829, ch. 30; 24 Am. & Eng. Ency. of Law, 1021; *Moore* v. *Cooley*, 88 Hun, 66.) The court erred in refusing to permit the witness, Elizabeth Ada Thompson, to testify in reference to her father, John V. Wemple, a former owner of great lot 69, Glen, Bleecker and Lansing's patent, pointing out to her what he claimed to be the north line of said lot. (*Abeel* v. *Van Gelder*, 36 N. Y. 513; *Morss* v. *Salisbury*, 48 N. Y. 636; *Boardman* v. *Reed*, 6 Pet. [U. S.] 341; 24 Am. & Eng. Ency. of Law, 1020–1022; *Skinner* v. *Odenbach*, 85 Hun, 595; 1 Greenl. on Ev. 194.) The declarations of ancient persons, made while in the possession of land owned by them, pointing out their boundaries on the land itself, and who are deceased at the time of the trial, are admissible, where nothing appears to show that they were interested to misrepresent in thus pointing out their boundaries, and it need not appear affirmatively that the declarations were made in restriction of or against their own rights. (Abb. Tr. Ev. 700.)

*John C. Davies*, *Attorney-General* (*J. Newton Fiero* of counsel), for respondent. The question as to what are the true boundary lines when the same are in issue, is a question of fact to be determined by the jury from all the evidence. (*Cochran* v. *Smith*, 73 Hun, 597; *Becken* v. *Weeks*, 39 N. Y. S. R. 786; 4 Am. & Eng. Ency. of Law, 789, 792; *Carpenter* v. *Fisher*, 12 App. Div. 622.) The declarations of persons who had been in possession of property adjoining the premises in controversy were properly excluded. They were not admissible as against the plaintiff upon the question of location of subdivision 10 of great lot 68. (*Chadwick* v. *Fonner*, 69 N. Y. 404; *Hymes* v. *Van Cleef*, 39 N. Y. S. R. 810; *Skinner* v. *Odenbach*, 85 Hun, 595; *Burke* v. *Jackson*, 57 Hun, 320; *Baird* v. *Slaight*, 28 N. Y. S. R. 667.)

Parker, Ch. J. The state having the legal title to subdivision 10 of great lot 68 of the Glen, Bleecker and Lansing patent, brought this action to recover the damages which it

claimed to have sustained by reason of the cutting and removal
of the heavy timber standing thereon to the mill of defend-
ant. No question whatever was made upon the trial of the
ownership by the plaintiff of subdivision 10 of great lot No.
68, but the defendant attempted to establish that the cutting
was not done upon that lot but upon the adjoining tract in
great lot No. 69. The defendant also attempted to show that
he purchased the logs from one Glasgow without any knowl-
edge that they were taken from the lands of plaintiff. The
jury found, and the Appellate Division has necessarily affirmed
the finding, that the state owned the lot from which the timber
was taken. The claim of the defendant that he was an inno-
cent victim of Glasgow's scheming, having purchased the logs
from him without suspecting that they were the property of
the state, has also been put at rest by the finding of the jury
and an affirmance of the judgment by the Appellate Division,
for the court in its charge told the jury that the defendant
was not liable provided he purchased the logs from Glasgow
delivered at his mill and had nothing to do with the cutting
and carrying away of the logs and timber. In view of certain
exceptions that are to be later considered, it should be said
that the defendant's testimony indicates satisfactorily that he
understood at the time the logs were being cut that the state
owned the lot from which they were being taken. It rarely
happens that the record discloses the taking of so much pains
to be sure in advance of a cutting that the state owns the land
to be cut over; for it appears from the testimony of the
defendant, of Glasgow and of Charles N. Woodworth, a sur-
veyor, that before a tree was cut they, with two others to help
them, made a survey of this lot. On his cross-examination
the defendant, in answer to a question as to whether he under-
stood that "the logs were to come off this lot you had helped
survey?" said: "I understood that they were to come some-
where from within the boundary that they had run out that
day.

"Q. When you went that day what did you go to run out?
What did you understand was to be run out?

" A. I can't tell. I learned afterwards they were survey-
ing subdivision 10 of 68, as claimed by the state. * * *
At the time I came to buy the logs I understood they had
been trying to locate subdivision 10 of 68."

Later, when the representatives of the state demanded com-
pensation for the injuries the state had received at defend-
ant's hands, he took the position that the state did not own the
land, and attempted unsuccessfully to prove it as has been
determined in this action.

A new trial is sought by the appellant who claims that he
was prejudiced upon the trial by the rulings of the court.
Woodworth, the surveyor, who, aided by the defendant and
Glasgow and two others, attempted to make a survey of sub-
division 10, great lot 68, prior to the commencement of the
work of cutting down the trees thereon, testified that his
father was a surveyor and that he had found among his papers
a book of what purports to be field notes.

" Q. Does it contain, among other things, what purports to
be field notes with regard to great lot 68 ? "

This was objected to and to the ruling of the court admit-
ting it the defendant excepted and the witness answered :
" They do." This exception does not entitle the defendant to
a reversal. The question was in no wise improper, and a
direct answer such as was given could in no wise affect the
issue. The question was asked apparently for the purpose of
laying a foundation for a claim of right to use the notes in
some manner, and, therefore, the court properly received it.
But it is said the field notes were not offered in evidence or
further described by the witness who testified that he used
them in making his survey. True, but that evidence was not
objected to nor was any motion made to strike it out, and
hence if there be ground of complaint anywhere it certainly
cannot be founded on the rulings of the court in so far as this
general subject is concerned.

The next exception that will be considered was taken to a
refusal of the court to charge that if defendant " only agreed
to pay orders given by Glasgow to Fisher, then the defend-

ant is not liable." We think this was not error for two reasons: *First*, the request was too broad, and, *second*, so much of it as was properly chargeable was in fact charged in other portions of the court's instructions to the jury. Evidence was introduced on the part of defendant tending to show that he purchased the logs of Glasgow although he paid Fisher for cutting and delivering them, and it was testified that when Fisher asked defendant about paying him he replied he would pay him on the orders of Glasgow and that he did so. It was the theory of the plaintiff, however, that this arrangement was intended as a cover to protect the defendant and that the circumstances proved surrounding the entire transaction entirely justified the jury in drawing that inference of fact. The aim of the request which we have quoted, therefore, was to separate if possible from all the other facts and circumstances the fact testified to that defendant had told Fisher that he would only pay him on orders given by Glasgow, and thus to make that simple statement by Holmes to Fisher as to how and when he would pay Fisher for the cutting of the logs, the controlling factor in the situation. The learned judge viewed the question more accurately, and correctly submitted the entire subject to the jury. He had already charged the jury "that one who employs another to do an act is assisting that other in doing it. If you find that the defendant agreed to pay Fisher for cutting the timber and bringing it to his mill, then you may find that he was engaged in assisting in the cutting and carrying away of the logs and of the timber upon the premises. * * * I am also asked to charge that Holmes, the defendant, is not liable, provided he purchased the logs from Glasgow delivered at his mill, and had nothing to do with the cutting and carrying away of the logs and timber. That is correct, with the charge I have already given you." Afterwards the appellant's counsel made the request to charge, which we have been considering, and the court, after reading the request, said: "If he had nothing to do with Fisher, or did not aid Fisher in any way in cutting the timber, and his agreement had nothing to

do with Fisher, then that would be so, but if, as an induce-
ment to Fisher to cut the logs, he agreed to pay him, he may
be liable. If the contract was solely between him and Glas-
gow, and he did not know where the logs came from, then he
may escape liability; but if, knowing that Fisher was cutting
the logs, he agreed to pay for them and take them at his mill,
you may find that he was assisting in cutting the logs." This
seems to be as favorable a charge upon the subject as defend-
ant was entitled to, but in any event he was not entitled to
have the jury instructed in effect that if they should find that
the defendant did say to Fisher that he would pay him only
upon the order of Glasgow, that they must necessarily find
that Glasgow's agreement with the defendant, if there were
one, was not a cover agreement, and that the real contract for
cutting and taking to market was not between the defendant
and Fisher.

A witness called by the plaintiff testified that while one
Wemple was the owner of lot 69 he cut the timber up to a
line of marked trees, which the witness described and stopped
there. This line of marked trees the witness claimed to be
the line between lots 68 and 69. The defendant did not
object to this testimony, but instead elected to treat it as
opening the door wide enough to allow him to prove declara-
tions of Wemple and other former owners of lot 69 to the
effect that the line between lots 68 and 69 was located else-
where, and for that purpose a daughter of Wemple was
called to testify where her father claimed the line to be, but
it was excluded and a new trial is asked for because of that
fact. Our attention is called to authorities establishing the
right to prove both declarations and admissions of one in
possession of real estate where the question was whether such
a person was in possession at a given time; or whether being
in possession it was under a claim of title. In all of these
cases acts done upon the land or the admissions of the party,
and in many cases his declarations as well, are received as in
the nature of a part of the *res gestæ* of the continuous and
pervading fact of possession or claim, but they are not com-

69

petent as a substitute for, or in contradiction of a paper title (*Gibney* v. *Marchay*, 34 N. Y. 301), the general rule being that parol declarations or admissions, since they cannot confer or divest title, are not admissible as evidence of title either to sustain the burden of proof of title or to rebut *prima facie* evidence, but only to show the nature and extent of the possession and the character and quality of the claim of title under which the property was held, or other material facts resting *in pais.* (Abbott's Trial Ev. [2d ed.] 200, and cases cited.) Not infrequently has this court asserted that a party cannot make title to land by parol admission of his adversary, nor be deprived of title by the declarations of his adversary's predecessor in title. (*Clark* v. *Baird*, 9 N. Y. 183; *Terry* v. *Chandler*, 16 N. Y. 354; *Walker* v. *Dunspaugh*, 20 N. Y. 170, 173.) The question of the possession of either of the lots by the present owners or their predecessors in title was not in controversy. The ownership of subdivision 10 of lot 68 was not at the time of the trial, nor at any time previous thereto, the subject of dispute, and the same is true of lot 69. The real question was whether these many acres of land were within the boundaries of subdivision 10 of lot 68, or within the limits of lot 69, and the defendant could not establish that the legal title to this large tract of land was not in the plaintiff by proving the declarations of another or others that it belonged to him or them. The admission of improper evidence without objection is rarely allowed to open the floodgates of improper evidence along the same line, but instead the remedy of the party claiming to be aggrieved is in a motion to strike out the evidence, admitted without his protest in the first instance.

The authorities cited by the appellant are not hostile to the rules we have stated. An examination discloses that in every one of the cases the question of possession was in issue. In *Abeel* v. *Van Gelder* (36 N. Y. 513) the court said: "Plaintiffs were allowed to prove the declarations of Hermance and Van Derpool, while they were owners of the property, with a view to show the extent of their actual occupation." The

plaintiffs in that action were attempting to establish legal title by adverse possession, and while it does not clearly appear whether the testimony was given in behalf of plaintiffs or of defendants it might well have been received in behalf of plaintiffs, inasmuch as the object of their testimony appears to have been confined to showing the extent and character of their actual occupation. *Morss* v. *Salisbury* (48 N. Y. 636) was an action of trespass, and the defendant by his answer claimed title by adverse possession, and it was held that the declarations of a former occupant were admissible for the purpose of characterizing his possession which it was claimed was adverse to that of plaintiff. In *Donahue* v. *Case* (61 N. Y. 631) the controversy was over a division line and the defendant claimed that there had been practical location of the division line and also that he had acquired a legal title to the lands in dispute by adverse possession. He had testified that in 1866 he and plaintiff agreed to have a survey made and the disputed line located. The conversation was excluded as was also the fact that a survey was made in pursuance thereof with the assistance of both parties, and other similar evidence, and this court held that it was error. The other authorities are to the same general effect, and it is sufficient to say that none of them suggest that in the absence of an attempt to show title by adverse possession a party may prove title in himself or another to a large tract of land by the declarations of a remote grantor that the lands in controversy belonged to him.

The judgment should be affirmed, with costs.

O'BRIEN, BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur; LANDON, J., dissents.

Judgment affirmed.