(142 App. Div. 320.)

GLEASON v. SHUART.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1911.)

1. EVIDENCE (§ 390*)—PAROL EVIDENCE VARYING WRITTEN INSTRUMENTS—DEEDS—DESCRIPTION OF PREMISES—AFFECTING COVENANTS OF WARRANTY.

Where a grantor conveyed certain premises, which were accurately described in the deed in terms and by reference to a map, and covenanted for the quiet enjoyment of the "premises above described," the scope of such covenant cannot be enlarged by parol proof that the grantor just before the execution of the deed pointed out a line other than the one described in the deed as the true boundary line.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719–1728; Dec. Dig. § 390.*]

2. COVENANTS (§ 33*)—COVENANT FOR QUIET ENJOYMENT—ACTION FOR BREACH—GROUNDS OF ACTION.

The defendant, while negotiating a sale of land to the plaintiff, pointed out as one of the boundaries a line five or six feet over upon the land of the adjoining owner, but in the deed the land was correctly and accurately described in terms and by reference to a map. The deed covenanted for quiet enjoyment of the "premises above described." The plaintiff sold the land, pointing out to his grantee the same line pointed out to him, and made the same covenant for quiet enjoyment. Plaintiff's grantee took possession to the line pointed out, but was evicted from the strip in ejectment by the adjoining owner, the plaintiff and his grantor, the defendant failing to defend the action, though notified to do so. Plaintiff voluntarily paid to his grantee the costs and expenses of the ejectment action, and sued defendant on his covenant to recover the amounts paid. Held, that as the strip from which plaintiff's grantee was evicted was not included in the description of the defendant's deed, and as the covenant by its express terms extended only to the premises described in the deed, there was no breach of covenant by the defendant.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 33; Dec. Dig. § 33.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. VENDOR AND PURCHASER (§ 334*)—REMEDIES OF PURCHASER—RECOVERY OF PAYMENTS—MISTAKE IN BOUNDARY.

Where a grantor of land, before the execution of his deed, pointed out to his grantee as the boundary line a line several feet over upon the land of an adjoining owner, and was not included in the description of the deed, and this grantee, pointing out and representing the same boundary as his grantor had done, conveyed to another who entered upon the strip, but had it taken from him in ejectment action, the first grantee after paying his own grantee the value of the strip lost may recover that amount, with interest, from the first grantor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. § 334.*]

Spring and Robson, JJ., dissenting.

Appeal from Trial Term, Allegany County.

Action by Edward B. Gleason against John D. Shuart. Judgment for plaintiff. Each party moved the court for a direction of a verdict in his favor, and, from an order denying defendant's motion for a new trial made upon the minutes of the court upon all the grounds specified in section 999 of the Code of Civil Procedure, defendant appeals. Modified and affirmed.

The action was commenced on the 7th day of August, 1907, to recover from the defendant, who was the plaintiff's grantor of certain premises described in the complaint and located in the village of Belfast, county of Allegany, damages alleged to have been sustained by the plaintiff because of defendant's failure to keep and perform a covenant of quiet and peaceable possession contained in the deed executed and delivered by the defendant to the plaintiff of such premises.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

D. D. Dickson, for appellant.
R. L. Richardson, for respondent.

McLENNAN, P. J. The material facts are not in controversy, and only questions of law are presented by this appeal. On the 13th day of September, 1899, the defendant and his wife by deed conveyed to the plaintiff, in fee simple, a lot in the village of Belfast, county of Allegany, N. Y., which was therein described as follows:

"All that tract or parcel of land, situate in the Town of Belfast, County of Allegany and State of New York, in the village of Belfast, and described as part of Block number five in said village and bounded as follows, viz. Commencing at the Northeast corner of the School lot which was conveyed to Eliza A. Williams by deed dated Oct. 1st, 1883 and recorded in Allegany County Clerk's Office Nov. 8, 1883 in Liber 131 page 189, running west to an iron stake in the grounds near the hen park, thence south nine (9) rods parallel with angel Street to South Street, thence East along south street to Thomas Miller's Southwest corner, thence north along the line of Thomas Miller's line to Chamberlains land to the place of beginning, for the purpose of locating said premises reference shall be had to Charles Williams map survey of the village of Belfast," etc.

It is the east line of the premises so conveyed which is the subject of this controversy, and it will be noted that such east line is

described as "thence East along south street to Thomas Miller's Southwest corner, thence north along the line of Thomas Miller's line to Chamberlains land to the place of beginning." Then is added, "for the purpose of locating said premises reference shall be had to Charles Williams map survey," etc.

There is no dispute as to where Thomas Miller's west line actually is. It is positively located by the Williams map, which was referred to in the deed of conveyance. Neither is there any question but that the deed executed by the defendant by its express terms only purported to convey a lot of which Miller's west line was the easterly boundary. The description in the deed is not ambiguous, and is in no manner uncertain. In the deed executed by the defendant is contained a covenant on the part of the defendant, of which the following is a copy:

"And the said John D. Shuart, party of the first part, does hereby covenant and agree to and with the said party of the second part, his heirs and assigns, that at the time of the ensealing and delivery of these presents he is the lawful owner and is well seized, in fee simple, of the premises above described, free and clear from all lien, right of dower or other incumbrance of every name and nature, legal or equitable, and that he has good right and full power to convey the same and that the premises thus conveyed in the quiet and peaceable possession of the said party of the second his heirs and assigns he will forever Warrant and Defend, against any person whomsoever lawfully claiming the same or any part thereof."

It is claimed on the part of the plaintiff, and is really not disputed by the defendant, that at the time or immediately before the execution of the deed in question by him he assumed to point out to the plaintiff where the west Miller line in fact was located, and the line so pointed out was as a matter of fact four or five feet easterly of the true line between the premises of Miller and the defendant, making a strip of about that width extending along the easterly line of the premises in question.

It is claimed, and not disputed, that upon the delivery of the deed to the plaintiff by the defendant the plaintiff went into possession of such strip of land in connection with the rest of the lot, and continued in such possession until on or about the 5th day of October, 1903, at which time the plaintiff conveyed the lot purchased by him of the defendant to one James C. Earle, and in the conveyance to Earle by the plaintiff the lot was described by exactly the same description as that given and used by the defendant in his deed to the plaintiff, and the plaintiff caused to be inserted in the deed executed and delivered by him to Earle the same covenants as were made by the defendant to him, the plaintiff, and it is also alleged and not disputed that Earle, upon receiving such conveyance from the plaintiff, went into possession of the strip of land lying to the east of such lot, to which reference has been made.

Prior to the time when Earle purchased from the plaintiff, Miller, who owned the premises east of the lot in question, conveyed the same to one Edward J. Sullivan, who has ever since been the owner thereof. When the plaintiff conveyed to Earle, he assumed to point out the true line between the lot he had purchased from the defend-

ant and the Miller-Sullivan lot, precisely as such line had been pointed out to him by the defendant, and he stated to Earle, in substance, what the defendant had stated to him in respect thereto. There is no possible doubt, under the evidence, that the defendant pointed out to the plaintiff as the true line between his premises and the Miller-Sullivan premises a line which was four or five feet east of the actual and true line and which extended that distance upon the Miller-Sullivan premises, and that the defendant supposed he was selling that strip in connection with his rest part of the lot, and that the plaintiff understood and supposed he was buying such strip. Neither is there any doubt but that, in turn, because of what the plaintiff told Earle as to what had been said and done by the defendant in respect to the pointing out of such line, that he, Earle, supposed he was obtaining title to the strip in question, and that the plaintiff ·believed and understood that he was conveying to Earle such strip. Soon after Earle received his conveyance from the plaintiff and which he assumed included the strip in question, Earle erected a fence upon the easterly side of said strip, which, as we have seen, was four or five feet easterly from the true line between the two lots. Thereupon Sullivan, the then owner of the premises formerly owned by Miller, commenced an action of ejectment against Earle to obtain possession of such strip which Earle was in possession of and claimed to own.

As we have said, there was no doubt as to the location of the true line when the Williams map was examined and considered. The surveyor called by the plaintiff testified, in substance, that from an examination of such map, which fixed the boundary lines of all the lots in that vicinity, the true line between the two lots in question was located without any uncertainty, and that Earle, according to such map, had no right, title or interest in or to the strip of land in question, but that it belonged to Sullivan. Notwithstanding Earle notified the defendant and the plaintiff, his direct and remote grantors, to defend the action of ejectment brought against him, claiming that under the covenants contained in their respective deeds of quiet and peaceable possession they were obligated to see to it that his possession of the strip of land in question was not disturbed or interfered with. Neither the defendant nor the plaintiff assumed to defend such action of ejectment and thereupon ·Earle assumed to defend the same, and in such defense he became liable to pay $259.24 costs, and $100 damages for the detention of the strip of land, amounting in all to $359.24, for ·which sum judgment was rendered against him; and such judgment was to the effect that Sullivan owned the strip of land in question, and was entitled to the immediate possession thereof. Earle having become liable in such ejectment action for the costs and expenses incurred therein, above referred to, and amounting in the aggregate to $577.92, presented an itemized bill of the same to the plaintiff, which bill included the following items: A. P. McIntosh, attorney, $50; Charles H. Brown, counsel, $42; witness fees, $25, and interest, $1.86, and demanded payment of the same. The plaintiff, so far as appears, without having a consultation with the defendant, paid such

bill to Earle, and this action is brought to recover from the defendant the sum so paid by him to Earle.

As we have seen, this action was commenced to recover damages alleged to have been sustained by the plaintiff because of the defendant's breach of the covenant for quiet and peaceable possession contained in the deed executed and delivered by the defendant to the plaintiff. By the terms of such deed, the defendant did not covenant for the quiet and peaceable possession of the strip of land which is the subject of this litigation. He only covenanted as to the premises which were described in the deed, and the description therein contained was plain and definite, and was not ambiguous in any respect. By such description the east line of the premises conveyed was defined as the line between the Miller-Sullivan lot and the lot owned by the defendant and conveyed to the plaintiff, and the covenant by its express terms only related to such premises.

It is urged by counsel for the respondent that the description contained in the deed may be enlarged by parol so as to include the strip in question, and that the covenant will then apply to the enlarged premises resulting from the representations made by the defendant that the east line of the premises conveyed by him is four or five feet further east than it actually is. We think that parol evidence is not competent for such purpose. Higinbotham v. Stoddard, 72 N. Y. 94. In Harris v. Oakley, 130 N. Y. 1, 28 N. E. 530, which was an ejectment action, Judge Haight, in writing the opinion of the court, said:

"We quite agree with the learned General Term that the declarations of a grantor before the execution of a deed tending to establish a boundary other than that made by the deed are not competent; that the effect of such testimony might accomplish a conveyance of land by parol in contravention of the statute of frauds. We will go even farther, and say that where, in the description of premises in a deed, courses, distances, and monuments are given, the premises must be located according to the deed, and all parol evidence of the declarations and acts of the parties of an intended different location is inadmissible as contradicting or varying the deed."

In Dibble v. Cole, 102 App. Div. 229, 92 N. Y. Supp. 938, decided by this court, it was held that parol evidence contradictory of the description in the deed was not admissible for the purpose of establishing title.

In People v. Holmes, 166 N. Y. 540, 60 N. E. 249, the question was again under consideration, and the court said:

"In all of these cases acts done upon the land or the admissions of the party, and in many cases his declarations as well, are received in the nature of a part of the res gestæ of the continuous and pervading fact of possession or claim, but they are not competent as a substitute for, or in contradiction of, a paper title (Gibney v. Marchay, 34 N. Y. 301), the general rule being that parol declarations or admissions, since they cannot confer or divest title, are not admissible as evidence of title either to sustain the burden of proof of title or to rebut prima facie evidence, but only to show the nature and extent of the possession and the character and quality of the claim of title under which the property was held, or other material facts resting in pais. Abbott's Trial Ev. (2d Ed.) 200, and cases cited. Not infrequently has this court asserted that a party cannot make title to land by parol admission of his adversary, nor be deprived of title by the declarations of his adversary's predecessor in

title. Clark v. Baird, 9 N. Y. 183; Terry v. Chandler, 16 N. Y. 354 [69 Am. Dec. 707]; Walker v. Dunspaugh, 20 N. Y. 170, 173."

In Muldoon v. Deline, 135 N. Y. 150, 153, 31 N. E. 1091, 1092, an action in ejectment was brought to recover a small piece of land claimed by both parties from and under the same grantor. It was conceded that the description in plaintiff's deed included the strip in question. Defendant offered to show by parol evidence the negotiations and conversations between the grantor and the plaintiff, to prove that it was not the intention of the parties to the deed to include therein this land, and that the first course in the deed should run differently. The court said:

"There is no ambiguity in the description contained in the deed. Every line can be surveyed on the ground just as it is given, and the grantor had the land. When the description is applied to the land, no ambiguity is produced, and hence there is no room for parol evidence. It is true that the intent of the parties must control, but that intent must be ascertained from the language contained in the deed. * * * The defendant in his answer did not allege any mistake and asked for a reformation of the deed. * * * If the defendant has any remedy, it is by an action to reform the deed, and to that action Burton probably and perhaps Harrington, the grantee of the premises lying southerly, would be necessary parties. With all the parties before the court, in such an action, parol evidence might be given to show mistake, and, if the defendant could clearly establish the mistake, he might procure a reformation of the deeds. * * * But, with these two parties only before the court, the deeds as written must control. There was no question of fact for submission to the jury." City of Geneva v. Henson, 195 N. Y. 464, 88 N. E. 1104.

Indeed, so far as we can discover, all the cases are to like effect.

It thus being clear, under the authorities, that, where the description of premises contained in a deed is not ambiguous, uncertain, or indefinite, it cannot be changed by parol. It must follow that the scope of a covenant contained in such deed and which is expressly limited to the premises described therein cannot be enlarged by parol. The defendant conveyed certain premises, which were described accurately, plainly, and without any ambiguity, and he covenanted to warrant and defend the possession of those premises and no other. We think the scope of such warranty cannot be enlarged and liability thereunder predicated by proving by parol that the grantor represented that a line other than the one described in the deed was the true line.

When Earle purchased the Shuart lot from the plaintiff, instead of comparing his deed with the Williams map, which would disclose the true line between the premises so purchased by him and Sullivan's premises, he built a fence upon the line pointed out by the plaintiff and which had been pointed out to the plaintiff by the defendant and represented by him to be the true line between the premises, but which, as we have seen, was actually four or five feet east of such true line, and on the premises of Sullivan to that extent. That being the situation, the defendant, Shuart, plaintiff's grantor, or the plaintiff, Earle's grantor, was under no legal obligation to defend such ejectment action. Indeed, no valid defense could be interposed. So far as the title to the strip of land was concerned, it clearly belonged

to Sullivan, and that became apparent by an examination of the Williams map, to which reference was made in the deed executed by Shuart and by the plaintiff. They only by the terms of their respective deeds conveyed the property which they owned as shown by the Williams map, and the covenants of quiet and peaceable possession made by them, respectively, only referred to the land so described in such deeds. The defendant had pointed out the wrong line to the plaintiff and represented that such and such was the true line, when, in fact, it was not, and the plaintiff made similar representations to Earle, relying upon what the defendant had done and told him. They were each liable to the plaintiff for any damages which he sustained because of such mutual mistake, or because of the misrepresentations or fraud practiced by them in the matter. Because of such representations, Earle believed that he was getting title to the strip of land in question, and he paid, we must assume, a larger price for the premises by reason thereof. In a proper action he could recover all damages which he sustained. The value of the strip which his grantor represented that he was selling, and that Earle was buying and for which Earle paid, he would be entitled to recover, or he would be entitled to recover the difference between the value of the property as it actually was and as it would be had the strip been added; but, as before said, we think that neither of such grantors were required to defend the action in ejectment, when neither had any defense thereto. Nor was Earle called upon to make such defense upon the refusal of the grantors to defend same. He had no defense, as would be apparent to him if he examined the Williams map before he entered upon such defense, as his own witness, the engineer, who also testified in this action, did.

It should be borne in mind that the deed executed by the defendant did not purport to convey the strip of land in question, and that the covenant of warranty contained in such deed in no manner related to such strip; yet this action is brought to recover damages alleged to have been sustained by the plaintiff because of the breach of such covenant by the defendant. No mistake or fraud is alleged in the complaint. It is simply an action to recover because of an alleged breach of covenant in writing, and the evidence clearly shows that no breach of such covenant was ever made by the defendant.

We conclude that the defendant is not liable for the costs and expenses incurred by Earle in defense of the ejectment action; that the plaintiff was not legally liable to Earle for the expenses so incurred; and that his voluntary payment of the same in no manner obligated the defendant to reimburse him. The defendant, if he made a mistake in pointing out the wrong line to the plaintiff, or if he made a misrepresentation as to the location of the same, had a right to say that he would respond in damages sustained by the plaintiff by reason of such mistake or misrepresentation; but he was not called upon to defend the ejectment action, to which there was no defense. Neither was Earle justified in defending the same at the cost and expense of the defendant. Therefore such costs and expenses so incurred are not a valid claim or charge against the defendant.

For a second cause of action, the plaintiff alleges that he paid to James C. Earle $100 for the loss of the strip of land in controversy, and which was taken from him in the ejectment action. It was proved upon this trial that such was the fair value of the land of which Earle was deprived and which had been pointed out to him by his grantor and by the defendant, and that amount having been allowed by the learned trial court and included in the judgment directed to be entered, both parties having moved for a direction of a verdict, we must assume that the court found that that was the value of the strip. We think that the plaintiff was entitled to recover that amount, with interest.

Therefore, the judgment should be modified by limiting the plaintiff's recovery to $100, with interest from the 6th day of April, 1907, the date when such payment was made, and, as so modified, the judgment should be affirmed, without costs to either party.

Judgment modified by reducing the verdict to $100 as of the date of the direction thereof, with interest from April 6, 1907, and, as so modified, affirmed, together with the order, without costs of this appeal to either party. All concur, KRUSE, J., in result only; except SPRING and ROBSON, JJ., who dissent and vote for affirmance in an opinion by SPRING, J.

SPRING, J. (dissenting). The Williams map and survey do not necessarily exclude from the conveyance in question the strip of land over which this controversy exists. The land is described in the conveyance as a part of block No. 5. The strip of land is concededly in that block. The line in dispute is the east line of the premises so conveyed, and that line according to the description in the deed is the west line of Thomas Miller's land, which is further identified at the north end of the line in question by the northeast corner of the school lot therein referred to, and extending to the Chamberlain lands, and the south end of the line is fixed as the Thomas Miller southwest corner. These points were further established by actual physical monuments upon the ground namely, a post at the north end of the line and a stone monument in the south end, with a fence actually located. None of these points is located upon the Williams map. Indeed, the block is not subdivided at all upon the map. As there delineated it is a plat of ground bounded on its four sides by streets. The only line located by the Williams map alone is the south line, which is South street. It is true that the surveyor called as a witness on behalf of the plaintiff testifies that the strip of land is not included in the description, but that opinion is based not upon the map alone, but by taking into account the record of other conveyances in the order of their priority; and the judgment in the action of ejectment is based upon that as well as adverse possession.

The points designated in the deed as indicated by the actual physical monuments upon the ground should control in fixing the east line of the premises conveyed, and that includes the strip in question. Indeed, the defendant admits that he intended to convey lands bounded on the east by a line drawn from the stone under the sidewalk to the post, and that, when he himself purchased the premises,

this stone was pointed out to him by Miller, who owned the adjoining premises on the east, as the southeast corner, that he afterward set the post for the purpose of preserving the location of what he believed to be the northeast corner of the lot, and he supposed the line was where the old fence stood. It seems clear that the conveyance was made with reference to physical monuments. It affirmatively appears that it was made upon an actual view of the premises by the parties to the conveyance, and it was early held that even courses and distances must give way to natural or artificial monuments (Wendell v. People, 8 Wend. 183, 190, 22 Am. Dec. 635), and that is now the well-settled rule (Burke v. Henderson, 54 App. Div. 157, 66 N. Y. Supp. 468; Smith v. Stacey, 68 App. Div. 521, 73 N. Y. Supp. 1022; Herse v. Mazza, 100 App. Div. 59, 91 N. Y. Supp. 778).

The authorities cited in the prevailing opinion do not seem to me applicable. In each of those cases the attempt was made to change the effect of the conveyance by parol evidence where the boundary lines of the premises were established without any ambiguity by the conveyance itself. That principle does not infringe upon the rule heretofore adverted to, for the boundary line could not be located with certainty by the Williams map, but depended upon the monuments which had been established and recognized as the easterly boundary line.

I think the judgment should be affirmed.

ROBSON, J., concurs.